Chouteau, Plaintiff in Error, v. Magenis *et al.*, Defendants in Error.

1. The legislature of the former territory of Missouri had no power by legislative act to grant divorces. (Per Napton, Judge ; Scott, Judge, not concurring, holding that the territorial legislature had such power.)

*Error to St. Louis Court of Common Pleas.*

This was an action instituted to recover possession of an undivided interest in a certain lot in the city of St. Louis. Pelagie Labadie, at the time of her death prior to the year

1814, owned a lot on Main street in St. Louis. At her death said lot descended to her children, Sylvestre Labadie, Emilie Pratte, Pelagie Sarpy, Sophie Chouteau, (the plaintiff in the present suit and at that time wife of Auguste P. Chouteau,) and Marie Antoinette Honey (at that time wife of John W. Honey). In 1814, the said heirs of Madame Labadie (except Mrs. Honey) conveyed their interest in said lot to said John W. Honey. On the 22d of January, 1816, the legislature of the territory of Missouri passed an act to divorce said Honey and wife.[*] (See Sess. Acts, 1816, p. 80.) On the 23d of January, 1816, said John W. Honey conveyed his interest in said lot to said Marie Antoinette Honey. This deed was a direct conveyance in the ordinary form. Said Marie afterwards married John Little and died in the year 1818, without issue, leaving her surviving the said John Little and her three sisters (including plaintiff) and one brother mentioned above. John Little died in 1832, and his interest was sold, under a judgment against his administrator, to John P. Schatzell. On the 13th of June, 1827, the four heirs of said Marie Antoinette Little, including plaintiff and her husband, conveyed the north half of said lot to Robert Rankin, bounding it south by the " lot of John P. Schat-

---

[*] This act is as follows : " An act to divorce John W. Honey and Marie Antoinette his wife, late Marie Antoinette Labbadie, from the bonds of matrimony. *Be it enacted by the General Assembly of the Territory of Missouri,* That from and immediately after the passage of this act, the matrimonial bond and civil contract of marriage existing between the aforesaid John W. Honey and Marie Antoinette his wife, late Marie Antoinette Labbadie, shall be and the same are hereby completely annulled, set aside and dissolved as fully and as effectually as if no such contract or union had ever been made and entered into between them. Sec. 2. *And be it further enacted,* that from and immediately after the passage of this act, the said John W. Honey and Marie Antoinette his wife, late Marie Antoinette Labbadie, shall in future be held as distinct persons, altogether unconnected by any mystical union or civil contract whatsoever at any time heretofore made or entered into between them. And the said Marie Antoinette Honey, late Marie Antoinette Labbadie, shall be taken and considered as *feme sole,* enjoying the separate protection of the law in her person and property, and free from the constraint and coercion of the said John W. Honey forever. This act to take effect from and after its passage."

zell." This deed was defectively acknowledged. In partition proceedings between Rankin and Schatzell, in 1828, the entire lot was sold to Rankin. In 1828 said Rankin conveyed the south half of said lot to Arthur L. Magenis. On the 20th of January, 1848, Sophie Chouteau sold and quitclaimed to Rankin the north half of the entire lot. In this deed the deed of 1827 is referred to. Auguste P. Chouteau died in 1838. Arthur L. Magenis went into possession in 1828, and possession under him has continued uninterruptedly until the present time. He made valuable improvements. The plaintiff claimed to recover one-eighth of that portion of the lot which was conveyed to Magenis. The court, by its instructions to the jury, ruled that the divorce of Honey and wife was void; that the deed from Honey to his wife Marie Antoinette Honey was inoperative as a conveyance to the wife.

The plaintiff recovered one-fortieth of the lot sought to be recovered. Writs of error were sued out by both plaintiff and defendants.

*E. Bates*, for Sophie Chouteau.

I. Admitting for the purposes of this case that the territorial legislature had no power to grant a divorce, still the deed from Honey to his wife was a good and valid conveyance of the land even though the marriage remained undissolved. It was good according to the common law as introduced into the territory in a modified form by the act of Jan. 19, 1816. The common law thus introduced is not identical with the English common law. (See 2 Louis. 521, 556.) By the English common law such a conveyance would be void. (1 Bl. Com. 442; Co. Lit. § 168.) This rule is arbitrary and technical in its character, and is habitually evaded in practice. A wife may take an estate from her husband through the medium of the statute of uses. (See 1 Mo. 553.) It is practically adjudged that man and wife are two. The husband may convey and she may take. If the land did not pass to Mrs. Honey, what became of it? It was no longer

13—VOL. XXVIII.

the grantor's. It is like the case of an alien. The deed was good under the common law at the day of its date.

II. But supposing it bad at common law, still it is good under the territorial act divorcing Honey and wife. The second section of said act is distinct from the first, and grants to the woman personal independence, proprietary rights and legal protection apart from her husband. Supposing the first section void, the second is an independent grant of rights and powers to the married persons notwithstanding the marriage while it existed. The power of the legislature to pass said section is not disputed. It is a power strictly within the terms of the organic law of June 4, 1812.

III. The defendants are estopped to deny the legal validity of the deed, for they are privies to it and claim even on this record under that deed.

*F. A. Dick*, for Magenis and others.

I. The court committed no error in instructing the jury that the deed from John W. Honey to his wife was inoperative. (See Frissell v. Rozier, 19 Mo. 448 ; 1 Co. Litt. 130 ; Reeves Dom. Rel. 90.) As Mrs. Honey could take nothing by this deed, she never had more than one-fifth of the property, one-eighth of which vested in Mrs. Chouteau.

II. The court committed error against the defendants. The deed of 1827 was well executed by Mrs. Chouteau. (Lindell v. McNair, 4 Mo. 380 ; 10 Mo. 320 ; 5 Mass. 454.) The act of 1825 in relation to conveyances should be held to apply to rights acquired after the law went into effect. (See 20 Mo. 170, 227, 269.) The deed of 1848 ratifies and confirms the deed of 1827. If the deed of 1827 be held valid, it operates as an estoppel against plaintiff. It calls for the lot on the south as Schatzell's. The marriage contract of 1809 established a community between Auguste P. Chouteau and the plaintiff. He as head of the community could sell the property that entered into it. The court erred in refusing to give the instruction authorizing the jury to find the plaintiff estopped.

NAPTON, Judge. If the legislative divorce in 1816 be treated as a nullity and John W. Honey survived his wife, the interest of the plaintiff in the premies is one-fortieth; and if that interest has not been disposed of or in any manner barred, the judgment of the court of common pleas was of course correct. If the legislative divorce and subsequent deed and marriage be upheld, Mrs. Chouteau's interest in the premises is one-eighth upon the supposition that the deed of June, 1827, was inoperative, and that no subsequent act of hers operated to convey her interest.

We have been unable to perceive any principle which would authorize this court to give efficacy to the second section of the divorce act of 1816, disregarding the first. Whatever construction the language of that section might admit of if it were an independent enactment, it is plain that its provisions were made altogether in reference to the subject matter supposed to have been provided for and attained in the first section. The powers conferred on Mrs. Honey, whatever they were, were not supposed to be given to her as a married woman. They were conferred as a consequence of the divorce previously granted. The legislature had no intention of distinguishing the marital relations and their incidents of John W. Honey and his wife, whilst they retained this relation to each other, from those incident to any other man and wife in the territory. Aside from the provisions of this act, the deed from John W. Honey to his wife can not be sustained on common law principles, or on such modifications of them as existed in this territory at that time. (Frissell v. Roper, 19 Mo. 448.)

The deed of June, 1827, not being operative to convey the plaintiff's interest in the lot, because not executed in the mode which the law then made essential, there is nothing done by her to affect her title until January, 1848, when she conveyed to Rankin her interest in the north half of the lot. To construe this last deed, not only as giving efficacy to the deed of 1827 for the northern half of the whole lots, but as an adoption of its recitals so as to estop her claim to the south

part of the lot, would be contrary to the plain intent of the instrument, which only professed to convey her interest in the north half owned by Rankin.

It is clear that the partition proceedings in 1827 can not in any way affect the plaintiff's interest, as she was no party to them, nor in any manner concurred in them.

The decision of the case, then, depends altogether upon the validity of the divorce law of 1816. On this subject I have only to say, that the decisions of this court, made without my concurrence, have determined me to let the judgment of the court of common pleas stand. It is true that these decisions are mainly based upon a provision of our state constitution prohibiting one department of the government from exercising powers properly belonging to another, but they are also to some extent placed upon the ground that marriage is a civil contract and within the provision of the constitution of the United States which prohibits the passage of a law impairing its obligations. Although not responsible for the reasoning or conclusion of the court in these cases, I am not prepared to say that the legislature of the state had any less power on this subject than the territorial legislature which preceded it; and this conclusion is strengthened by observing that as early as 1807 there was a territorial law making ample provisions for divorces, which, with some modification, was reënacted in 1816. Moreover, the question, we may reasonably presume, is likely to prove a mere abstraction, except so far as the disposition of the present case is concerned, and there is no peculiar hardship in its facts and circumstances which prevents the enforcement of the previous adjudications on this subject.

Judgment of common pleas affirmed.

SCOTT, Judge. I do not concur in affirming this judgment. The territorial assembly, in my opinion, had authority to grant divorces, which is a different question from from that arising on the right of the general assembly to do so under our state constitution as it was originally framed.

In the cases in which this question has arisen, all of which were under the constitution, the argument mostly relied on against legislative divorces was derived from the provisions of our constitution.   No such restrictions existed under the territory on the legislative power.   The general result of the American authorities is that the granting of divorces by the legislative power is not the exercise of such a judicial authority as will render them invalid.   (Bishop on Marriage and Divorces, § 792.)   Under such circumstances, there is no propricty. in extending the principle of the decisions made heretofore by this court further than the ground on which they stand will warrant.