THE STATE TO THE USE OF WOLFF V. BERNING, *Appellant.*

1. **Administration**: CONVERSION. If an administrator pledge notes of the estate for his own purposes, he is guilty of an act of conversion for which his bondsmen will be liable.

2. ———— : ————— : ESTOPPEL. An administrator is not estopped from reclaiming notes of the estate pledged by him, for his own purposes, to a person having notice of their true ownership.

3. ———— : ————— : LIABILITY OF SURETIES. If an administrator who has converted assets of the estate by pledging them for his own purposes, fails to recover them when he might, such failure, though itself a breach of duty, will not operate to shift the liability for the resulting loss from the shoulders of those who were his sureties at the time of the conversion to those of persons who became his sureties in an additional bond given in pursuance of sections 36, 38, 39, article 1 of the administration law, (Wag. Stat., p. 76,) during the time when he might have effected the recovery.

    In such case both sets of sureties would be liable.

4. **Conversion**: MEASURE OF DAMAGES. In a suit grounded on the conversion of a chose in action the sum which appears to be due on it is, *prima facie*, the measure of recovery.

5. **Defect of Parties**: PRACTICE. Want of proper parties is a defect of which advantage can only be taken by demurrer or answer filed in the trial court. The objection comes too late when made for the first time in the Supreme Court.

6. **Administration**: ORDER OF DISTRIBUTION. In an action by a distributee on an administrator's bond based on an order of distribution in the probate court, as against the sureties in the bond, the order is conclusive evidence of the plaintiff's right to sue.

7. ———— : ————. In an action upon an administrator's bond, based upon an order of distribution made upon final settlement, an order of partial distribution made pending the administration, cannot be used to limit the amount of plaintiff's recovery.

8. ———— : LIABILITY OF ADMINISTRATOR'S SURETIES. In an action by a distributee on an administrator's bond, the fact that the plaintiff has obtained a judgment for the same cause of action upon an additional bond given by the administrator in pursuance of sections 36, 38, 39, article 1 of the administration law, will be no bar to recovery.

9. ———— : COMMISSIONS. An administrator who has converted assets of the estate is properly chargeable with their full value, without any deduction for commissions; and his sureties are liable to the same extent.

10. **Pleading**: PRACTICE. Objections going to the definiteness of the petition, are waived if not presented before judgment.

11. **Action on Bond**: SEVERAL BREACHES: JUDGMENT. When all the breaches alleged in a petition on a bond are but one and the same act or default, a judgment, for the plaintiff need not show upon which breach the finding is made.

*Appeal from St. Louis Court of Appeals.* The case is reported in 6 Mo. App. 185.

AFFIRMED.

Louis Wolff died leaving a will, by which he devised the residue of his estate, after the payment of specified legacies, to his widow, Dorothea. On the 25th of July, 1872, Christian Staehlin qualified as executor, giving a bond in the sum of $60,000, with Henry B. Berning and others as sureties, and immediately took into his possession assets of the estate to the value of $45,993.89. On the 27th of September, 1873, by order of the probate court, and upon the petition of the residuary legatee, he gave a new bond, on which Berning was not surety. On the 14th of March, 1874, the probate court ordered him to pay to the residuary legatee $5,000. This order was complied with. On the 21st of January, 1875, the executor made final settlement, from which it appeared that he was in debt to the estate in the sum of $30,806.09, and he was ordered to pay to the residuary legatee $30,614.74.

This sum not having been paid over, Mrs. Wolff instituted this suit against Berning as surety in the first bond. At the same time she instituted a suit against the sureties in the second bond, and in that suit recovered a judgment for $27,706.60. In the present case the petition charged that the executor before the giving of the second bond, converted and appropriated to his own use all the assets of the estate, and assigned as breaches of the first bond: (1) That the executor, during the period covered by the first bond, misappropriated $45,993.89, and in consequence thereof did not pay over to relator $30,614.74. (2) That he did not pay to relator $30,614.74 adjudged to be due her

on final settlement, for the reason that he did, during the period covered by the first bond, appropriate and convert to his own use $45,993.89, and in consequence is indebted to the relator in the sum of $30,614.74. (3) That he failed to pay to the relator the sum of $30,614.74, adjudged to her by the probate court of St. Louis county on the 21st day of January, 1875, upon the final distribution of the estate of Louis Wolff, the failure so to comply being the result of and occasioned by the wrongful conduct of said executor during the period covered by the first bond, in that he misappropriated and converted to his own use during that period $45,993.89, and is, in consequence thereof, indebted to relator in the sum of $30,614.74.

The answer denied the breaches alleged.

At the trial, in support of the allegations of the petition, plaintiff offered evidence that Staehlin kept his bank account at the Central Savings Bank of St. Louis; that he had no separate account as executor; that on the 3rd of October, 1872, being then in embarrassed circumstances, and the cashier of the bank being aware of his embarrassment, he negotiated with the bank a note signed by him as executor of L. Wolff, deceased, for $12,000, payable ninety days after date, pledging as collateral security for the payment of said note, three notes, belonging to the estate, executed respectively by Gehrke, Ittner and Adamson, and of the face value, in the aggregate of $18,000; that these notes were all payable to L. Wolff, the deceased, and were delivered without indorsement; that the proceeds of this loan were deposited to the credit of Staehlin's account at the bank; that the loan was twice renewed with the same collateral; and that in the year 1874 the Gehrke and Ittner notes were paid, and the proceeds applied upon Staehlin's note. Defendant then showed that in June, 1875, the bank caused a deed of trust, by which the Adamson note was secured, to be foreclosed, and became the purchaser of the property. Defendant then offered the order of partial distribution, of date March 14th, 1874, and the

judgment obtained by relator against the sureties in the second bond; but, on the objection of the relator, they were both excluded by the court. Several instructions were given and refused, but none of them need be noticed, except that in relation to the measure of recovery, which the court declared would be the aggregate amount of the principal and interest of the three misappropriated notes computed up to the time of the conversion, together with interest upon such aggregate at the rate of six per cent per annum from the time of the conversion.

The court found for the plaintiff in the sum of $23,-029.22 and rendered judgment accordingly. On appeal to the St. Louis court of appeals this judgment was affirmed, and defendant brought the case, by appeal, to this court.

*Alex. J. P. Garesche* for appellant.

The court erred in excluding the judgment on the second bond. That bond was not supplementary, but covered a different period. Hence, if Schaeffer was responsible, Berning could not be; and the judgment in plaintiff's favor against Schaeffer, if not conclusive against her in this suit, was at least admissible as evidence to be weighed by the jury. The action being one for conversion, three elements are essential to recovery: (1) Ownership by plaintiff at time of conversion; (2) The then right to immediate possession; (3) Then or since possession by defendant. Now, appellant never was in possession. True, Staehlin was; but this is an action against the defendant on his bond, and he is responsible, not in an action of conversion, but in covenant, for a breach of his obligation that the executor should faithfully account. And the damages to be recovered are the sum due the estate by the executor after full accounting. Again, at date of the conversion *cestui que use* had neither the ownership nor the right to the immediate possession. Her right was acquired by the order of distribution. *State v. Fulton,* 35 Mo. 325;

*Naylor v. Moffett*, 29 Mo. 129; *Salmon v. Davis*, 29 Mo. 180; *State v. St. Gemme*, 31 Mo. 230; *Smith v. Denny*, 37 Mo. 23; *Collins v. Dulle*, 45 Mo. 272; *Kerrin v. Roberson*, 49 Mo. 254. Staehlin's commissions should have been deducted. *Frost v. Winston*, 32 Mo. 495; *Clyce v. Anderson*, 49 Mo. 37. There was never any legal transfer of the notes to the bank. Wag. Stat., 89, § 40; *Stagg v. Linnenfelser*, 59 Mo. 342; *Weil v. Jones*, 70 Mo. 560; *Prosser v. Leatherman*, 4 How. (Miss.) 240; *Middlesex B'k v. Minott*, 4 Met. 325; *Bank v. Dubuque, etc., R. R.*, 8 Iowa 280; *Nations v. Hawkins*, 11 Ala. 862; *Phillips v. Martiney*, 10 Gratt. 333. Up to date of his final settlement Staehlin had the right to recover them back. He was not estopped. Herman on Estoppel, 246; Bigelow on Estoppel, (2 Ed.) 255; 59 Mo. 344; *Hopper v. McWhorter*, 18 Ala. 231; *Pierrepont v. Bernard*, 5 Barb. 375; *Thomas v. Bowman*, 29 Ill. 426; *Magee v. Gregg*, 11 Sm. & M. 77. The loss accrued, therefore, not by this invalid pledge, but by Staehlin's neglect to reclaim it. Defendant should not have to answer for a technical, only for the actual loss. *State v. Drury*, 36 Mo. 286; *Pinkstaff v. People*, 59 Ill. 151.

*R. E. Rombauer* also for appellant.

In order to entitle plaintiff to recover substantial damages, it is essential for her to show affirmatively either that the entire estate has been lost by the misconduct of the executor, or that she is the only party interested in the estate, and no one else can complain of that misconduct but herself, because no one else has sustained injury, or that she has such separate and distinct interest in the property or funds converted, as entitle her to maintain a separate action in regard thereto. The petition makes the proper averments upon these points, but they are all denied by the answer, and there is no proof to sustain them. *State v. Matson*, 44 Mo. 308; *State v. Campbell*, 10 Mo. 724; *State v. Morton*, 18 Mo. 53. Plaintiff cannot maintain her action

because she has no exclusive right of property in the notes and no immediate right of possession. *Petit v. Bouju,* 1 Mo. 64; 1 Chitty's Plead., 164; *Hume v. Tufts,* 6 Blackf. 136; *Kier v. Peterson,* 41 Pa. St. 363; *Vanzant v. Hunter,* 1 Mo. 71. The court erred in excluding the order of distribution offered in evidence by defendant. It was the only testimony in the entire cause which even tended to fix and determine plaintiff's interest. The answer alleged that such an order was made and complied with; the reply denied it. Whether viewed as testimony fixing the extent of plaintiff's interest, or as a part of a chain of evidence showing that defendant's principal, and, consequently, defendant also, was entitled to certain credits, it should have been admitted. Testimony that is competent and relevant for any purpose should not be excluded. *U. S. Sav. Asso'n v. Edwards,* 47 Mo. 448. The instruction as to the measure of plaintiff's recovery is objectionable because it wholly disregards the right of every creditor, and of every other legatee, and the extent of plaintiff's interest in the estate. It tells the jury that plaintiff may, in this action, recover for the whole extent of the injury inflicted by the misconduct of the trustee—not upon her, but upon the estate, entirely regardless of the extent of her own interest, and entirely regardless even of the fact, whether that interest, whatever it may be, is exclusive or severable. Defendant was entitled to have the executor's commissions deducted. The evidence shows that commissions were allowed him on final settlement on the entire amount, including these notes for $18,000 and interest. On what imaginable principle should the surety on the first bond be deprived from receiving the benefit of these commissions, and the surety on the second bond receive them exclusively? The distributees were entitled to the property only after deducting the executor's commissions.

*J. M. & C. H. Krum* and *Kehr & Tittman* for respondent.

If the pledge of the notes in October, 1872, worked a conversion of them to the executor's own use, then the appellant is liable, although the executor did give an additional bond, and made settlements carrying down the balance due to the estate so as to make the sureties on the new bond liable upon final settlement. The fact that upon final settlement the executor failed to comply with the order to pay over, is not an obstacle in the way of respondent, but constitutes an essential element of her right of recovery. Till then her cause of action did not accrue. 36 Mo. 286; *Smith v. Paul,* 21 Mo. 51. That the pledge did work a conversion of the notes is unquestionable. They passed from the possession and control of the executor. They were never regained by him. The estate and the residuary legatee under the will are absolutely deprived of all benefit from the notes as a part of the testator's property. The proceeds of the loan to secure which the pledge was made, went into the individual funds of the executor, and were not passed to him in his representative capacity at all. 36 Mo. 284; *Schroeppel v. Corning,* 5 Denio 236; *Williams v. Wall,* 60 Mo. 318. It is immaterial whether the executor passed the title to the notes. If the officers of the bank were aware of the unlawful and unauthorized character of his act, then the bank and the executor simply stood *in pari delicto,* and the legatee could have sued either at her election. *Wilson v. Doster,* 7 Ired. Eq. 231; *Bunting v. Ricks,* 2 Dev. & B. Eq. 130; *Exum v. Bowden,* 4 Ired. 281; *Smart v. Watterhouse,* 6 Humph. 158; *Walker v. Craig,* 18 Ill. 116; *Makepeace v. Moore,* 10 Ill. 478. At all events, the notes passed from the executor and thereby became lost to the estate. The fact that the beneficiaries under the will might have recovered them, (4 Ired. 286,) does not excuse the executor. *State v. Scholl,* 47 Mo. 84; *Upchurch v. Norsworthy,* 15 Ala. 708; *Pistole v Sheet,* 5 Porter 71; *Fambro v. Gantt,* 12 Ala. 298; *Bragg v. Massie,* 38 Ala. 89. Furthermore, having pledged the notes with the bank, and

having failed to pay the debt to secure which they were pledged, the executor could not have recovered the notes from the bank at any time after the failure of performance of his contract on his part. He would be estopped to deny his title as between the bank and himself. Bigelow on Estop., 387; *Taylor v. Chester*, L. R., 4 Q. B. 309; *Cheesman v. Exall*, 6 Exch. 341. The record of the judgment on the second bond was properly excluded. Respondent could proceed upon either bond; assigning appropriate breaches, she could have judgment upon both bonds, but only one satisfaction. 36 Mo. 281. The measure of damages was correctly announced. No evidence was offered to rebut the presumption that the notes were worth their full face value and interest. *Flagg v. Mann*, 3 Sum. 84; *Bredow v. Mutual Savings*, 28 Mo. 187; *Menkens v. Menkens*, 23 Mo. 252. In fact, as to the notes of Gehrke and Ittner, the evidence is that they were fully paid. The various breaches assigned in a suit upon an official bond do not constitute several causes of action. *State v. Davis*, 35 Mo. 406. Substantially there was but one breach. *State v. Henslee*, 54 Mo. 518; *Hoggatt v. Montgomery*, 6 How. (Miss.) 93; *People v. Dunlap*, 13 Johns. 437. The judgment was, therefore, not objectionable in failing to specify the breach or breaches upon which it was based.

SHERWOOD, C. J.—Action on the first bond of the executor, Berning, the defendant, being one of the sureties therein. On application of relator at a period subsequent to the execution of the first bond, and under the provisions of section 36, 1 Wagner's Statutes, 75, a second bond was given, defendant not being one of the obligors. The provisions of the statute in such cases are that: "Such additional bond, when given and approved, shall discharge the former securities from any liability arising from any misconduct of the principal, after filing the same, and such former securities shall only be liable for such misconduct as happened prior to the giving of such new bond." 1 W.

S., p 76, § 39.   The petitiona lleges that during the period covered by the first bond, the principal converted to his own use all the assets of the estate amounting to $45,993.89, and the evidence establishes that Staehlin, after the execution of the first, and prior to the execution of the second bond, pledged as collateral to the Central Savings Bank notes belonging to the estate.   This pledging was done for Staehlin's individual benefit, and the notes were never redeemed or restored to the estate.

I.

The question which goes to the heart of this cause is: Are the sureties on the first bond responsible for the act aforesaid of their principal and the loss consequent upon such act?   Discussion is unnecessary as to whether the act of Staehlin was, as against relator, strictly speaking, an act of conversion.   At all events, it was an act of conversion as against the estate which Staehlin represented. Any wrongful disposition of property constitutes a conversion.   *Williams v. Wall,* 60 Mo. 318, and cases cited. And it is well settled law, that an executor or administrator can be guilty of converting the assets of the estate to his own use.   3 Wms. Extrs., 1797, and cases cited; and in this State, the fact of such conversion by the executor may be alleged as a breach of the conditions of the bond.   *State v. Flynn,* 48 Mo. 413; *State v. Drury,* 36 Mo. 281.   That the act complained of, and set forth in the petition, was a breach as well of the conditions of the executor's bond, as of his fiduciary duty, none will deny; this is sufficient for the present purpose, and it is consequently unimportant by what name the act of the executor is designated.   It is true that under our ruling, (*Stagg v. Linnenfelser,* 59 Mo. 336,) Staehlin could not convey, nor did he do so, any title to the notes he pledged to the bank, but it is equally true that but for his act in this regard, the loss which subsequently occurred to the estate would not have occurred.

## II.

The point has been much discussed, whether Staehlin could have maintained an action for the recovery of the assets unwarrantably pledged to the bank, and as to whether he was estopped from doing so.   In reference to this it may be said that the bank is conclusively presumed to have known the law; to have known that Staehlin had neither power, right nor authority to raise money by giving a note in his fiduciary capacity, nor by pledging, as collaterals, the choses in action of the estate.   There exists but one way under our statute, in which an executor may assign or in any way whatsoever transfer the choses in action of an estate, and that is, he may assign them in discharge of the claims of creditors, legatees or distributees equal to the amount of the bond or note.   1 Wag. Stat., p. 89, § 40; *Stagg v. Green*, 47 Mo. 500; *Stagg v. Linnenfelser*, 59 Mo. 336; *Chandler v. Stevenson*, 68 Mo. 450; *Weil v. Jones*, 70 Mo. 560.   This statutory restriction on the power of the executor, must, in legal contemplation, be held as well known to the bank, as if the words of section 40, *supra*, had been written across the face of the notes he attempted to pledge; for whatsoever the law annexes as the incident of a contract, whether granting a privilege or announcing a prohibition, is as much part and parcel thereof, as though written therein or indorsed thereon.   But Staehlin, as a matter of fact, practiced no deception on, and made no false statements to the bank; and if he had, the plain letter of the law would have flatly contradicted any such statements.   Both parties thus dealt at arms' length with each other, in full view of the stern legislative prohibitions, and so neither can complain of being ensnared, deceived, led astray or hoodwinked by the other.   In these circumstances, it is but stating elementary law to say no estoppel could arise between Staehlin and the bank, (*Stagg v. Linnenfelser, supra*; Bigelow Estop., pp. 437, 473; *Davenport v. Turpin*, 43 Cal. 597. and cases cited,) and, therefore, no

obstacle impeded him from recovering from the bank either the notes or their proceeds.

### III.

But granting that Staehlin could have maintained his action during the period covered by the second bond, for the assets unlawfully pledged by him, during the period of the first bond; granting that it was a breach of duty on his part for him to fail to bring his action, does such breach of duty pending the second bond, cancel the legal effects and consequences of a dereliction of duty pending the first bond? By no means. So that it is an all sufficient answer to the statement that Staehlin, pending the second bond, could have recovered the assets converted pending the first bond, to briefly reply that no such recovery was obtained by him. Whatever consequences there flowed from pledging the notes, remained unaltered and unaffected. A " liability arising from the misconduct of the principal " prior to the giving of the second bond, according to the express language of the statute under discussion, had been incurred, and the loss to the estate was directly attributable to the misconduct of Staehlin prior to the execution of the second bond—as but for such misconduct, no such loss could have occurred.

These circumstances bring this case fully within the purview and principle of the rule as laid down in *State v. Drury, supra.* It is true, in that case the bond declared on was that of a curator, but the same provisions were applicable to curators as to administrators, (R. S. 1845, p. 68, § 37,) a point which is expressly adverted to in the opinion in that case, and section 39, which we have been discussing, is but a literal copy of section 37, *supra.* The doctrine distinctly asserted in the case just cited, is, that if a conversion takes place during the time of the first bond, whereby a loss occurs, the obligors therein must be held liable, notwithstanding a breach and a liability occurred also under the second bond.

7—74

It quite often may happen that a breach of a bond is a continuing breach, commencing during the period of the first bond and extending down to and through the period covered by the second bond; where the maladministration would be a breach of both bonds; and this seems to have been the case here. In such case the relator might well have judgment on both bonds, but of course could have but one satisfaction. *State v. Drury, supra*; and, doubtless, in such circumstances, contribution would be justly allowable between the sureties of the respective bonds, since the doctrine of contribution does not spring from the contract of the parties nor from any privity between them, nor does it depend upon whether their suretyship arises under the same instrument or under divers instruments, if all the instruments are designed to secure the same subject matter and the sureties have a common interest and a common burden to bear; but the doctrine is founded on principles of natural justice independent of contract. *Deering v. Winchelsea*, 2 Bos. & Pul. 270; *Craythorne v. Swinburne*, 14 Ves. 160; 1 Story Eq. Jur., §§ 470, 495, and cases cited.

## IV.

The judgment recovered in this action was for $23,-029.22. This sum was the amount of the notes and interest converted by Staehlin to his own use, and was a part of the assets of the estate, and the second declaration of law correctly defined the measure of damages—if the notes, in the absence of anything to the contrary, are presumed to be worth their face—and we think this fact may be fairly assumed, as it was the theory upon which the case was tried, and no objections were urged then to this view. It is too late to urge such objections now. Besides, the rule is, that in actions of this nature, *prima facie*, the value of the chose in action alleged to be converted, is the sum which appears to be due on it. *Bredow v. Mutual Savings Inst.*, 28 Mo. 187; *Menkens v. Menkens*, 23 Mo. 252.

## V.

In relation to the point made by defendant, that it does not appear that relator is the only party interested in the estate, it is sufficient to say that no such objection was made in the court below; that if there was any such defect of parties plaintiff, advantage should have been taken of it by demurrer or answer; *Reilly v. Tenbroeck*, 63 Mo. 563, and cases cited; that even if this defect existed, it is too late to raise the objection and take advantage of it in this court for the first time.

## VI.

And that the probate court, on final settlement, having ordered the executor to pay to relator $30,614.74, this judgment was conclusive against the sureties in the bond sued on, that she was entitled in her own separate right to maintain her action; *State v. Creusbauer*, 68 Mo. 254, and cases cited; and negatives the right of any other legatees; and the judgment recovered was for only a portion of the sum which the probate court ordered the executor to pay relator.

## VII.

There was no error in excluding the order of partial distribution offered in evidence by defendant. The accounts between the parties were open until final settlement, and there was no admission by relator that no more was due her, because she applied for less than was due her.

## VIII.

Nor was error committed in rejecting the evidence of a recovery had by relator against Schaeffer, a surety on the second bond, and this, because the second bond did not discharge the sureties on the first bond for any misconduct occurring prior to giving the second bond. *State v. Drury, supra.*

## IX.

Defendant claims that the recovery was excessive, because no credit was given Staehlin for his commission on the notes converted by him. This claim is one which, if allowable at all, should be made and adjusted in the probate court. It is a claim, too, which comes with a very bad grace from the surety of a principal who has been guilty of a breach of trust in converting the assets of the estate to his own use. Commissions are incident to and belong to a faithful administration of the estate, and should not be allowed in an instance like this. The cases cited by defendant are not similar to this one; they do not show flagrant conduct on the part of the defendants in them, such as this record discloses. And in *Clyce v. Anderson*, 49 Mo. 37, one of these cases, the instruction is broadly given, that in a case disclosing willfully wrong conduct on the part of the executor, commissions should not be allowed.

## X.

The foregoing remarks have sufficiently shown that the motion for a new trial was properly overruled; and as to the motion in arrest it suffices to say that the objection therein came too late; that the notes alleged to have been converted, were not described in the petition—even conceding such objection would have been valid in the first instance. The petition certainly stated a cause of action, though it failed to describe the particular assets charged to have been converted, since it alleges that Staehlin converted to his own use all the assets of the estate, and under this broad allegation evidence was certainly admissible to show that certain particular assets were converted.

## XI.

As to the further point made by the motion that three breaches of the bond were alleged, but no specification on which breach the finding was made and judgment rendered, it is enough to say that there was but one cause of action

alleged, as all the breaches constituted one cause of action. *State v. Davis*, 35 Mo. 406; *State v. Henslee*, 54 Mo. 518. For these reason we affirm the judgment. NORTON and RAY, JJ., concur; HOUGH and HENRY, JJ., dissent.