Parker v. Straat.

JANE R. PARKER, Respondent, v. JOHN N. STRAAT, Appellant.

**St. Louis Court of Appeals, March 4, 1890.**

1. **Judgments:** RES ADJUDICATA. A question in issue and determined in a suit is *res adjudicata* in a second suit between the same parties; and its conclusiveness is not affected by the fact that, the first suit being one in equity, the parties therein consisted of the parties in the second suit and others, who were joined for the purpose of protecting their interests in the subject-matter of the litigation.

2. **Trusts:** LIABILITY OF TRUSTEE. A trustee who wrongfully converts property is liable to the *cestui que trust* for the proceeds realized from the property by him, though such proceeds be in excess of the actual value of the property.

3. ———: ———. A trustee is liable to the *cestui que trust* for an unlawful diversion of the trust fund, though the *cestui que trust* could also have followed the trust fund, because the person acquiring it from the trustee purchased with notice of the trustee's wrong.

4. ———: ———. If a judgment, recovered in the name of a trustee, be wrongfully disposed of by him as such trustee, it will be no defense by him to an action by the *cestui que trust* for the conversion, that, during the progress of the proceeding in which the judgment was recovered, and prior to the recovery thereof, he was removed from his position as trustee, and another was appointed as trustee in his stead.

5. **An exception,** taken to the action of the trial court in striking out a part of the pleadings, is waived if it is not preserved in the motion for new trial.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*John N. Straat, pro se.*

*Samuel N. Holliday,* for the respondent.

THOMPSON, J., delivered the opinion of the court.

The theory of this action seems to be that it is an action for damages for the conversion of the beneficial interest of the plaintiff in a judgment recovered by the defendant as trustee. The petition was probably drawn with the idea of proceeding, if necessary, on a wider ground; for, in addition to a prayer for judgment for a balance due and unpaid on a note, hereafter recited, it contains a prayer for general relief. At the trial, the defendant took the position that the action was in the nature of a suit in equity, but the court held that it was a suit at law, proceeding, no doubt, on the decision of the supreme court in *Sherwood v. Saxton*, 63 Mo. 78. Thereupon the parties waived a jury, and proceeded to trial before the court.

We do not regard it as material to determine whether it was a suit at law or a suit in equity, as the essential facts are conclusively established, and there is, therefore, no question of the propriety of the findings of fact of the trial court, or of our office in reviewing the facts. Legal and equitable remedies being blended under our code of procedure, we apprehend that, in a case where all the essential facts are undisputed, and no error appears in the admission or rejection of evidence, it is simply our office to say, on appeal, if the proper exceptions have been saved and the proper assignments of error have been made, whether the trial court properly applied the law to the facts.

The facts, stated in detail, are very numerous and complicated and hard to understand; but we apprehend that, so far as they are necessary to a decision of the cause, they may be stated as follows:

The defendant Straat was executor under the will of one Blumenthal, and trustee under the will of one Doyle. As such executor, he had three thousand dollars of loanable funds, and, as such trustee, he had seventeen thousand dollars of loanable funds. John G. Blow

was the son of Henry T. Blow, deceased, and, as such, was entitled to a distributive share of one-sixth of the estate of Henry T. Blow. William C. Jamison was administrator of the estate of Henry T. Blow. The estate of Henry T. Blow consisted of a large quantity of real estate, and, also, of a large number of shares in the Granby Mining Company, and in the Collier White Lead and Oil Company. John G. Blow had become indebted to various parties in a sum nearly equal to twenty thousand dollars, and wanted to raise money on a mortgage deed of trust of his interest in his father's estate, to clear off these debts. He thereupon applied to the defendant for a loan of twenty thousand dollars upon such security. The defendant made the loan, three thousand dollars of it out of the Blumenthal estate, of which he was executor, and seventeen thousand dollars of it out of the Doyle estate, of which he was trustee. This money was paid to the various creditors of John G. Blow, except a small residue, which was turned over to Blow himself. To secure this loan, the defendant took a deed of trust of John G. Blow on his undivided interest in his father's estate. In this deed of trust the defendant was himself the trustee. The land was to pass to the defendant, in trust, as soon as partition should be had. As the personal property belonging to the estate of Henry T. Blow was in the hands of Jamison, as administrator, the defendant, as further security, demanded the endorsement of Jamison upon the notes. Jamison endorsed them, for accommodation, as appears by his testimony, and they were passed over to Straat. Jamison, under an arrangement with John G. Blow and the defendant, paid the interest on the notes, or, rather, paid the interest notes which were given accompanying the principal notes. When the three-thousand-dollar note fell due, Jamison took it up and it was not canceled or marked paid. The defendant's contention was, and is, that it was *paid*.

Jamison claimed, however, to have taken it up, as endorser, with his own money, and Jamison's contention was established in a suit between this plaintiff and this defendant, of which mention will be made hereafter. Jamison, having thus purchased the note with his own money from this defendant, as has been adjudicated between this plaintiff and this defendant, became subrogated, as the holder of the note, to the security of the mortgage deed of trust which had been given by John G. Blow on his interest in the estate of his father, in which the defendant was trustee. Jamison, desiring to borrow money for himself, procured a loan of three thousand dollars from the plaintiff in the present action, and used this note, which he had taken up from the present defendant, as collateral for his own note. The plaintiff thus became the holder of this three-thousand-dollar note of John G. Blow, and, as such holder, became subrogated to the security of the mortgage deed of trust given by Blow, so far as it applied to this note.

In this mortgage deed of trust the defendant in this action was trustee. He thus occupied the position of trustee for two sets of beneficiaries. One of these beneficiaries was the plaintiff, as the holder of this three-thousand-dollar note of John G. Blow. The others were the beneficiaries under the will of Doyle. These beneficiaries were the wife and children of the defendant. In any conflict between the interests of the two sets of beneficiaries he, therefore, had some interest in preferring the latter as against the plaintiff. This he seems to have done. He took the position in 1884, that the three-thousand-dollar note had been paid and extinguished by Jamison as administrator of the estate of Henry T. Blow, or else by Jamison in his character of endorser, it seems immaterial which; his position was that the three-thousand-dollar note had been *paid*. He, therefore, as trustee under the Blow deed of trust, proceeded to advertise the real estate conveyed by that

deed of trust for sale, for the benefit of the Doyle estate, and to the exclusion of the plaintiff and also of Mrs. Abby Dodd, who had acquired an interest in the estate of Blow, which need not be described. To enjoin this sale, in the year 1884, the plaintiff in the present action united with Mrs. Dodd and her husband in an action against the present defendant, and J. Charles Le Bourgeois, to whom John G. Blow had conveyed his equity of redemption in his interest in his father's estate. Such proceedings were had in this action, that the court on October 29, 1884, found that the three-thousand-dollar note already spoken of had not been paid, but was the property of this plaintiff; and the court enjoined the sale which this defendant was about to make under the deed of trust for the exclusive benefit of the Doyle estate, in which his wife and children were the beneficiaries, and also removed him as trustee, and appointed Jeptha H. Simpson in his stead. From this decree the defendant prosecuted an appeal to the supreme court, but subsequently dismissed his appeal in that court,—at what date does not appear. Simpson, as trustee appointed in the place of defendant, proceeded to sell the real estate conveyed in the Blow deed of trust. Some of it was sold to strangers, and some of it was bought in by beneficiaries under the deed of trust to prevent a sacrifice of the property; and the notes secured by the deed of trust were credited with the proceeds, the plaintiff's *pro rata* share of the proceeds of the sale being eighteen hundred and eighty-seven dollars and thirty-six cents, a part of which only was credited on the back of the notes, but the whole of which was credited by the court in this action in the judgment which it rendered.

Recurring to the fact that Jamison, as administrator of the estate of Henry T. Blow, deceased, held a large number of shares of stock in the Granby Mining Company, which was covered by this deed of trust, it

further appears that when he filed his final settlement as administrator, he took credit for the distributive share of John G. Blow in the stock of the Granby Mining Company. As the title to this stock passed to the defendant Straat, as trustee in the John G. Blow deed of trust, and as the distributive share of John G. Blow had not been turned over to him, he filed, October 2, 1884, exceptions to the final settlement of Jamison in respect of this item. These exceptions were dismissed by the probate court, January 24, 1885, and he appealed to the circuit court. The circuit court sustained the exceptions and surcharged the final settlement of Jamison to the extent of twelve hundred and twenty and two-thirds shares of the Granby Mining Company stock, which, with interest, amounted to twenty-two thousand and thirty dollars and forty-two cents. The circuit court ordered, July 22, 1885, that this sum be paid by Jamison to Straat as trustee, and ordered that the judgment be certified to the probate court. Thereafter, on January 27, 1886, the probate court made a new order of final settlement and distribution in conformity with the order of the circuit court. In this judgment the probate court directed Jamison, as administrator, to pay to Straat, trustee, as assignee of John G. Blow, the sum awarded by the circuit court, to-wit, twenty-two thousand, five hundred and thirty-eight dollars and fifty-two cents, which, it is assumed had been increased to this amount by further accumulating interest. This judgment Straat assigned on the record of the probate court, to Augustus Pullis and Edward C. Dameron for their use and benefit, and authorized them to collect and enforce payment of the same in his name or otherwise, but without cost to him. The assignment was signed: "Jno. N. Straat, trustee. Jno. N. Straat." Thereafter, on April 12, 1886, Straat, as trustee and assignee of John G. Blow, recovered in the probate court against John L. Ferguson, Logan D. Dameron,

and other sureties on the bond of Jamison as administrator of the estate of Henry T. Blow, a judgment in the sum of twenty-two thousand, five hundred and thirty-eight dollars and fifty-two cents. This judgment Straat likewise assigned April 7, 1887, on the records of the probate court to Augustus Pullis and Edward C. Dameron, signing the assignment: "Jno. N. Straat, trustee." He, at the same time, transferred to Pullis and Dameron the seventeen-thousand-dollar note, the consideration of which inured to the Doyle estate. For the transfer of these judgments and of this note, Pullis and Dameron paid to Straat the sum of sixteen thousand dollars, each of them paying to him eight thousand dollars. The transfer of the judgment and the note was, so to speak, a lumping transaction, that is to say, it does not appear how much was paid for the judgments and how much for the note.

For the sixteen thousand dollars thus received Straat has rendered no account to the plaintiff in this action, who, it is to be remembered, as the holder of the three-thousand-dollar note of John G. Blow, secured by the deed of trust of his interest in his father's estate, in which deed on trust the defendant Straat was trustee, had an equitable interest in the judgment which Straat as trustee thus recovered against the sureties of Jamison, administrator of the estate of Blow. In thus selling the judgment, Straat proceeded on his original assumption that the plaintiff had no interest in it, by reason of the fact, as he contends, that the three-thousand-dollar note of Blow was paid, and not purchased by Jamison. If Straat's position was wrong in thus selling the judgment and withholding from the plaintiff her due proportion of the proceeds of the sale of it, he converted her interest in it, and is liable to her therefor in damages.

We have already stated that it was adjudicated by the circuit court in an action, in which the present plaintiff was a party plaintiff and in which the present

defendant was a party defendant, that this three-thousand-dollar note had not been paid by Jamison, but that this plaintiff became the lawful holder of it. It is now argued by the defendant that that judgment was *not res adjudicata* of this question, because of a want of identity of parties and of subject-matter. There was no want of identity of parties or of subject matter. This plaintiff was a party plaintiff, and this defendant was a party defendant. The mere fact that Dodd and wife, having a separate interest in the trust of which Straat was the trustee, were also joined as plaintiffs, it being a suit in equity, for the purpose of protecting *their* interests, does not destroy the identity of parties, as between the present plaintiff and the present defendant. Nor does the further fact of Le Bourgeois, who had become the owner of John G. Blow's equity of redemption, being joined a defendant for the purpose of concluding his rights, have this effect. Nor was there any want of identity of subject-matter between that action and the present, so far as concerns this question. In that action the plaintiff set up her ownership of the three-thousand-dollar note of John G. Blow, and the defendant denied her ownership on the very ground on which he denies it in this action, namely, that it had been paid by Jamison before he transferred it to her. The court adjudged the question in her favor and against the defendant. The judgment is, therefore, conclusive upon this question.

It thus clearly appears that, in thus selling and assigning the judgment to Pullis and Dameron, Straat committed a breach of trust in respect of this plaintiff, in changing the trust fund without legal authority, and became liable to her for whatever damage she may have thereby sustained. Or, if we look at it from the standpoint of an action at law, he converted the judgment in which she was, so to speak, a tenant in common, though not a party to it on the record, and is liable to

her for damages for the conversion. Whether it is regarded as the one or the other seems to be rather than otherwise a matter of legal phraseology. It, therefore, remains only to consider whether the circuit court was right in its award of damages.

The circuit court gave judgment against the defendant, in the sum of two thousand and seventeen dollars and forty-six cents. This sum appears to have been reached by computing interest on the three-thousand-dollar note and crediting it with the sum of eighteen hundred and eighty-seven dollars and thirty-six cents admitted to be a proper credit, as already stated.

It must be mentioned in this connection that the defendant took the witness stand and offered to testify as to Jamison's financial condition; but this, on objection of the plaintiff, was ruled out. He also offered to testify as to the financial condition of the sureties on Jamison's bond as administrator at the time of the assignment of the judgments in question, but this, on objection of the plaintiff, was also ruled out. This evidence appears to have been tendered on the theory that, in an action for the conversion of a judgment, the face value of the judgment is no more than *prima facie* evidence of its value, and that the defendant may, in mitigation of the damages, show its real value. It has been held that, in an action for the conversion of a *promissory note*, the face value of the note is *prima facie* its real value. *Menkens v. Menkens*, 23 Mo. 252; *Bredlow v. Mut. Savings Inst.*, 28 Mo. 181; *State to use v. Berning*, 74 Mo. 98. But it is equally true that such evidence is *prima facie* only. It stands as the measure of damages, as was said in *Menkens v. Menkens, supra*, "in the absence of all proof to the contrary." Or, as was said in *Bredlow v. Mut. Savings Inst., supra*, "the measure of damages, in an action of trover for the conversion of a chose in action, is, *prima facie*, the amount that appears to be due on it, subject to be

reduced by proof showing that it is of less value than it calls for." We have no doubt that the principle here announced is the rule of damages in an action for the conversion of a judgment, and that ordinarily the defendant in such an action is entitled to show that the judgment is of less value than it calls for.

In order to determine the admissibility of this evidence we must recur to two propositions : *First*, that these judgments were a mere substitute for the property held by Straat in trust as a pledge, and that his legal rights as trustee were either to foreclose the pledge by public sale, if the deed so provided, or by foreclosure proceedings and sale in equity, if the deed was silent on this subject. When, therefore, he sold them without pursuing the only methods that the law provided for the foreclosure and sale of the property, he not only acted in violation of his duties as trustee, but debarred the plaintiff from ever ascertaining the true value of the property, in the manner in which she was entitled to have it ascertained. *Next*, that the trustee is not necessarily limited in his liability to the actual value of the property, which he converts, but may be liable beyond that value if he receives a greater value; that is to say, he is liable for the value of the property, if he sells it for less than its value, in violation of his duties as trustee, and is liable for more than the value of the property, if he sells it for more.

Now it appeared, by the uncontradicted evidence in this case, that these judgments were sold to friends and relatives of the judgment defendants, together with a note of seventeen thousand dollars and interest, for sixteen thousand dollars. How much they paid for the judgments, and how much for the notes, nowhere appeared. Even though the judgment defendants were apparently insolvent at the time, these purchasers might, and probably did, pay a certain amount for the purpose of buying the exemption of their relatives and

friends. Even *legally* worthless claims are often paid for heavily to buy peace,—much more so claims, the legal validity of which is fully established. This is particularly so in commercial communities, where one may apparently be wholly insolvent one day, and be a man of large means within a short period thereafter, as daily experience shows. All that the defendant could possibly show, by the testimony excluded, was the apparent insolvency of the judgment defendants at the date of the sale,—and that, under the circumstances of this case, was no proper evidence in reduction of the damages.

It is argued by the defendant that the plaintiff ought not to maintain this action against him, because she can pursue her remedy against the assignees of the judgments, Pullis and Dameron. Assuming that Pullis and Dameron had *notice* of the rights of the plaintiff in the judgment, so that she could, in an action against them, assert her interest therein, on the theory that the defendant unlawfully diverted a trust fund to them with their knowledge, and that equity in such cases will make them trustees for the beneficiary,—yet we do not see how the argument helps the defendant. If the trustee of a fund has unlawfully diverted it to a stranger, when sued by the beneficiary for the damages, will he be heard to say that the beneficiary can maintain an action against the stranger to get back the fund, and, therefore, that the beneficiary ought not to have an action against him for damages for his wrong-doing; or, treating the question from the standpoint of an action at law, if the bailee of my horse wrongfully sells him to a stranger, and I bring an action against my bailee for the conversion, will any court of justice allow him to say in defense that I ought not to maintain the action against him because I have an action of replevin against the stranger in possession? That the plaintiff has an election of remedies in such cases is shown by *Sherwood v. Saxton*, 63 Mo. 78.

It is argued that, as Straat had been removed as trustee, under the deed of trust of John G. Blow, at the time when these judgments were recovered in the probate court, they were *nullities*, and, hence, that his conversion of the plaintiff's interest in them could not be the subject of an action for damages. He recovered them in his character of trustee under that deed of trust, and he assigned them to Pullis and Dameron in the same character. We, therefore, think that he is estopped from saying, in the present proceeding, that he had no title, as trustee, to recover those judgments or to assign them. But aside from this, we do not understand, from the record, that his removal as trustee, was final at the time when these judgments were rendered. The judgment of the circuit court, removing him as trustee, was rendered in the fall of 1884. He appealed from that judgment to the supreme court and subsequently dismissed his appeal; but it does not appear at what time he dismissed his appeal. The sale of the lands, under the deed of trust made by his successor, did not take place until the year 1887, which was subsequent to his recovery and assignment of these judgments. Mr. Holliday, testifying for the plaintiff, says that "the case was allowed to go on in the name of Mr. Straat, although he had been removed as trustee." But it does not appear but that the case was allowed to go on in his name because, although he had been removed as trustee, he had appealed from the order of removal and his appeal was still pending. In either view, there is no merit in this argument.

A bill of exceptions was taken by the defendant to the action of the court in overruling his motion to strike out a part of the plaintiff's reply to his answer; but, as this exception was not renewed at the close of the whole case in his motion for new trial, it was waived, and is not the subject of an assignment of error here, even if any error was committed in the ruling.

General assignments of error are made touching the rulings of the court upon matters of evidence, but, with the exception of the one which we have considered, none have been argued; and, after carefully examining the record, we see no error in them, of which the defendant can justly complain. Much of his testimony, that was ruled out, related to matters which were concluded by the previous judgment of the circuit court in the action by the plaintiff and Dodd and wife against him and Le Bourgeois, which has already been spoken of. The bill of exceptions, taken in that case, was put in evidence by the plaintiff, and it contained the testimony of the defendant, which presented his version of the case as fully substantially, as it would have been done by his testimony which the court ruled out.

As the judgment, which the court rendered, was the only judgment which could have been rendered upon an established state of facts, we do not consider it material to review the court's rulings upon instructions.

The judgment will be affirmed. It is so ordered; all the judges concur.