Hillsborough, }
June 24, 1937. }

CENTURY INDEMNITY CO.

*v.*

MARYLAND CASUALTY CO. & *a.*

*Ivory C. Eaton* and *Devine & Tobin (Mr. Tobin* orally), for the plaintiff.

*Demond, Woodworth, Sulloway, Piper & Jones (Mr. Piper* orally), for the defendants.

WOODBURY, J.   The question presented relates to the rights of the sureties *inter se.*   Concisely stated, it is as follows.   Does the entire loss ultimately fall upon the first or upon the second surety, or are they co-sureties, and, if they are, does the right of contribution exist between them?

There being nothing in the agreed statement of facts to indicate that the parties to this petition entered into any agreement concerning their respective obligations toward one another, and the statutes of this State being silent upon the subject, their rights *inter se* must be determined by the application of common-law principles. Under the common law the right of contribution between co-sureties "does not arise from contract, but rather on the ground that 'equality of burden as to a common right is equity'."   *Cass* v. *Stearns,* 66 N. H. 301, 302, citing *Kent,* Ch., in *Campbell* v. *Mesier,* 4 Johns. Ch. 334.   See also, *Ayer* v. *Tilton,* 42 N. H. 407, 417.   This right of contribution "is predicated upon a common and equal footing of the parties as between each other."   *Lockwood* v. *Dickey,* 83 N. H. 365, 369.   Whether or not the parties hereto are on a "common and equal footing" depends upon the extent to which each is obligated to the beneficiaries for the default of the executor, and this question is one of statutory interpretation.   It follows that authorities elsewhere, except in so far as they expound the general principles of law involved, are of little aid in arriving at a solution of the problem presented.

Both bonds are in the form required by statute, P. L., *c.* 299, *s.* 13.   Their conditions, so far as here material, are that the executor shall "administer said estate according to the laws of said State, and the will of the testator; render to said Judge an account of administration, upon oath, within one year, and pay and deliver the rest and residue of the estate which shall be found remaining upon the account of said executor to such person or persons respectively, as said Judge, by his decree, according to the laws of said State, shall limit and appoint."

Upon the agreed facts all of these conditions were broken. The condition of the first bond was violated when the executor failed to render his account within one year, and this breach of condition occurred after that bond was executed and before it was discharged. The conditions of both bonds were violated when the executor appropriated the assets of the estate to his own use, and this is so in spite of the fact that such appropriation occurred before the execution of the second bond and may have occurred even before the execution of the first. The reason for this is that the breach was a continuing one. It began when the executor first converted the funds and it lasted as long as the conversion lasted, in this case, during the entire period of administration. Under these circumstances bonds of the sort here under consideration are generally held to relate back to cover continuing breaches which had their inception before such bonds were executed. *State* v. *Doud*, 269 S. W. Rep. 923; *State* v. *Berning*, 74 Mo. 87; *Pinkstaff* v. *People*, 59 Ill. 148; *Scofield* v. *Churchill*, 72 N. Y. 565.

The executor's failure to pay the balance of the estate to the beneficiaries at the time of his final account was a breach of the final condition of the bonds which occurred during the term of the second of them. One breach having occurred at a time when the first bond only was in effect, another having occurred after that bond was discharged and while the second was in force, and the third breach having been continuous throughout the terms of both bonds, it must follow that both sureties are liable to the beneficiaries unless the statute under which the first surety was discharged is to be construed in such a way as to give it absolute immunity from the consequences of past as well as future devastavits.

We do not believe that the statute can be so construed. That statute, (P. L., c. 310) provides in substance that upon application of either the executor (s. 4), or the surety (s. 5), the Probate Court may permit or require a new bond to be filed, and, in its discretion, discharge the surety on the original bond "from all further responsibility" thereon. There is no suggestion that the proceedings in the Probate Court were in any way irregular, and that court, in granting the relief asked for, ordered that the first bond "be cancelled and annulled" and the second bond "substituted in place of said cancelled bond." This order is at least as far reaching as the statute, if not more so, and obviously gave the first surety the greatest degree of relief to which it was entitled under the statute.

Had it been the intention of the legislature to make this relief of

the first surety complete, that is, to empower the Probate Court to order a release from liabilities already incurred as well as to discharge it from devastavits occurring thereafter, it would seem that the word "further" would have been omitted from the statute. Had the statute used the phrase "discharge from all responsibility," it might be construed to give the first surety full freedom from all liability for all devastavits whenever they may have taken place. The phrase used, however, includes the word "further," and to give that word effect the statute must be taken to mean that the discharged surety is relieved only from such devastavits as might occur after its discharge by the Probate Court. Its liability for devastavits which occurred prior thereto remains unaffected by the statute.

The first surety is therefore liable for the default of the executor which consisted in his conversion of the assets of the estate. For this default the second surety, as appears earlier in this opinion, is also liable under the doctrine of relation back. It follows that both sureties are liable to the beneficiaries, and they are liable in equal degree because the statute does not affect the rights of either in regard to it. With respect to this devastavit of the executor the sureties are "upon a common and equal footing." They are, therefore, co-sureties and the right of contribution exists between them even though they are bound by different instruments. *Ayer* v. *Tilton*, 42 N. H. 407, 417; *New Amsterdam Casualty Co.* v. *Brookhart*, 212 Iowa 994; 76 A. L. R. 904; 50 C. J. 278 *et seq.*

The entire loss, then, must be equally divided between the plaintiff and the defendant, and this loss includes not only the sum converted with interest thereon, but also costs in the discretion of the Superior Court and reasonable expenses reasonably incurred. *United States Fidelity &c. Co.* v. *Naylor*, 237 Fed. 314, 323.

Although it seems evident that the executor perpetrated a fraud upon the plaintiff when, after his devastavit, he induced it to become a surety for him, it does not follow therefrom that the entire loss must be cast upon the defendant. The reason for this is that there is nothing in the agreed statement of facts tending to indicate that the defendant was in any way implicated in that fraudulent act of the executor.

*Case discharged.*

All concurred.